FILED ENTERED
LODGED RECEIVED

OCT 30 2018

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY DEPUTY

Judge Lasnik

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff

v.

MARC SAPATIN,

Defendant.

NO. CR18- 255RSL

**PLEA AGREEMENT**

The United States of America, by and through Annette L. Hayes, United States Attorney for the Western District of Washington, Andrew C. Friedman and Francis Franze-Nakamura, Assistant United States Attorneys for said District, and Anthony Teelucksingh, Trial Attorney with the United States Department of Justice Computer Crime & Intellectual Property Section, and MARC SAPATIN and his attorney, Christopher R. Black, enter into the following Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A):

1. **Waiver of Indictment**. Defendant, having been advised of the right to be charged by Indictment, agrees to waive that right and enter a plea of guilty to the charges brought by the United States Attorney in an Information.

2. **The Charges**. Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enter pleas of guilty to the following charges contained in the Information.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

a. Conspiracy, as charged in Count 1, in violation of Title 18, United States Code, Section 371;

b. Conspiracy to Commit Money Laundering, as charged in Count 2, in violation of Title 18, United States Code, Section 1956(h).

By entering these pleas of guilty, Defendant hereby waives all objections to the form of the charging document. Defendant further understands that, before entering his guilty pleas, he will be placed under oath. Any statement given by Defendant under oath may be used by the United States in a prosecution for perjury or false statement.

3. **Element of the Offenses.** The elements of the offenses to which Defendant is pleading guilty are as follows:

a. The elements of Conspiracy, as charged in Count 1, in violation of Title 18, United States Code, Section 371, are as follows:

First, beginning in or about April 2012 and ending in our about September 2017, there was an agreement between two or more persons to commit a crime;

Second, the Defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

Third, one of the members of the conspiracy performed at least one overt act.

The conspiracy alleged is a conspiracy to commit Wire Fraud and Computer Fraud and Abuse.

The elements of Wire Fraud are as follows:

First, the Defendant knowingly devised a scheme or plan to defraud, or to obtain money or property by means of false or fraudulent pretenses, representations, or promises;

Second, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence or were capable of influencing a person to part with money or property;

Third, the Defendant acted with intent to defraud; that is the intent to deceive or cheat; and



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Fourth, the Defendant transmitted or caused to be transmitted a wire in interstate or foreign commerce to carry out or attempt to carry out an essential part of the scheme.

The elements of Computer Fraud and Abuse are as follows:

First, the Defendant knowingly caused the transmission of a program, code, command, or information to a computer without authorization;

Second, as a result of the transmission, the Defendant intentionally impaired the integrity or availability of data, a program, a system, or information;

Third, the computer was used in or affected interstate or foreign commerce or communication; and

Fourth, during any one-year period, the loss was at least $5,000, or 10 or more computers were affected.

b. The elements of Conspiracy to Commit Money Laundering, as charged in Count 2, in violation of Title 18, United States Code, Section 1956(h), are as follows:

First, beginning in or about April 2012 and ending in our about September 2017, there was an agreement between two or more persons to commit the crime of money laundering; and

Second, the Defendant became a member of the conspiracy knowing of its object and intending to help accomplish it.

The elements of Money Laundering are as follows:

First, the Defendant conducted a financial transaction that involved the proceeds of wire fraud or computer fraud and abuse;

Second, the Defendant knew that the money represented the proceeds of wire fraud or computer fraud and abuse; and

Third, the Defendant knew that the transaction was designed in whole or in part to conceal or disguise the nature or source of the proceeds of the wire fraud or computer fraud and abuse.

4. **The Penalties.** Defendant understands that the statutory penalties applicable to the offenses to which he is pleading guilty are as follows:



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

a. For the offense of Conspiracy, as charged in Count 1: a maximum term of imprisonment of up to five years, a fine of up to $250,000, a period of supervision following release from prison of up to three years, and a mandatory special assessment of $100. If a probationary sentence is imposed, the probation period can be for up to five years. Defendant agrees that the special assessment shall be paid at or before the time of sentencing.

b. For the offense of Conspiracy to Commit Money Laundering, as charged in Count 2: a maximum term of imprisonment of up to twenty years, a fine of up to $500,000 or twice the amount of money involved in the conspiracy, whichever is greater, a period of supervision following release from prison of up to three years, and a mandatory special assessment of $100. If a probationary sentence is imposed, the probation period can be for up to five years. Defendant agrees that the special assessment shall be paid at or before the time of sentencing.

Defendant understands that supervised release is a period of time following imprisonment during which he will be subject to certain restrictive conditions and requirements. Defendant further understands that, if supervised release is imposed and he violates one or more of the conditions or requirements, Defendant could be returned to prison for all or part of the term of supervised release that was originally imposed. This could result in Defendant's serving a total term of imprisonment greater than the statutory maximum stated above.

Defendant understands that, as a part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order Defendant to pay restitution to any victim of the offenses, as required by law. Defendant further understands that the consequences of pleading guilty may include the forfeiture of certain property, either as a part of the sentence imposed by the Court, or as a result of civil judicial or administrative process.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs, or restitution, is due and payable immediately and further agrees to submit a completed Financial Statement of Debtor form as requested by the United States Attorney's Office.

5. **Rights Waived by Pleading Guilty.** Defendant understands that by pleading guilty, he knowingly and voluntarily waives the following rights:

a. The right to plead not guilty and to persist in a plea of not guilty;

b. The right to a speedy and public trial before a jury of his peers;

c. The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for him;

d. The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

e. The right to confront and cross-examine witnesses against Defendant at trial;

f. The right to compel or subpoena witnesses to appear on his behalf at trial;

g. The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

h. The right to appeal a finding of guilt or any pretrial rulings.

6. **Ultimate Sentence.** Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

7. **Restitution.** The parties agree that they will recommend that the Court apportion liability for restitution owed to AT&T Mobility between Defendant and the defendants charged in related cases. Defendant agrees to pay restitution in the apportioned amount of $441,500 (which shall not be joint and several with any other defendant). Said amount shall be due and payable immediately and shall be paid in



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

accordance with a schedule of payments as proposed by the United States Probation Office and ordered by the Court.

8. **Forfeiture of Assets.** Defendant understands that the forfeiture of property is part of the sentence that must be imposed in this case. Defendant agrees to forfeit to the United States immediately all of his right, title, and interest in any and all property, real or personal, that constitutes or is derived from proceeds traceable to the charges of Conspiracy and/or Conspiracy to Commit Money Laundering to which Defendant is pleading guilty. All such property is forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), Title 18, United States Code, Section 982(a)(2)(B), Title 18, United States Code, Section 1030(i), and Title 18, United States Code, Section 982(a)(1), and includes, but is not limited to:

a. a sum of money in the amount of $441,500, representing a portion of the proceeds Defendant obtained from the offenses, subject to any necessary adjustments under 18 U.S.C. § 981(a)(2)(B)

ACS CRB MS

The Defendant understands and acknowledges this forfeited sum of money is separate and distinct from the restitution that is ordered in this case.

Defendant agrees to fully assist the United States in the forfeiture of this property and to take whatever steps are necessary to pass clear title to the United States, including but not limited to: surrendering title and executing any documents necessary to effect forfeiture; assisting in bringing any property located outside the United States within the jurisdiction of the United States; and taking whatever steps are necessary to ensure that property subject to forfeiture is not sold, disbursed, wasted, hidden, or otherwise made unavailable for forfeiture. Defendant agrees not to file a claim to any such property in any federal forfeiture proceeding, administrative or judicial, that may be initiated.

The United States reserves its right to proceed against any remaining property not identified in this Plea Agreement, including any property in which Defendant has any interest or control, if that property constitutes or is traceable to proceeds of the Conspiracy and/or Conspiracy to Commit Money Laundering.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

9. **Statement of Facts**. The parties agree on the following facts. Defendant admits he is guilty of the charged offenses:

From November 2010 to approximately October 2013, Defendant, MARC SAPATIN, was an employee of AT&T. Defendant worked as a Customer Support Specialist in AT&T's Customer Care call center in Bothell, Washington, which served customers from throughout the United States. AT&T issued Defendant credentials to log into both Defendant's computer workstation and a variety of proprietary programs on that workstation. Defendant received training from AT&T on network security. As a result, Defendant knew that only authorized people were allowed to access AT&T's internal company network. Defendant also knew that his login credentials were for his use only, and that AT&T would assume that only Defendant was using his login credentials to access his workstation and the programs on that workstation.

One of the programs on Defendant's workstation was a program through which Defendant could "unlock" phones for eligible AT&T customers. Unlocking a phone allows the phone to be used on the cellular networks of other service providers. Defendant's job duties required him to be familiar with the products and services offered by AT&T. As a result, Defendant knew that AT&T offered to sell phones either at a discount or under an installment plan if the customer agreed to enter into a long-term service contract with AT&T.

As part of Defendant's job duties at AT&T, Defendant unlocked phones when customers met certain criteria set by AT&T. Based on the training Defendant received at AT&T, Defendant understood that he was not authorized to unlock phones when those criteria had not been met. Defendant further understood that every time he used Defendant's network credentials to submit an unlocking request, he was representing to AT&T that he had reviewed the eligibility criteria and had determined that the customer in question satisfied that criteria. Defendant also understood that unlocking a phone when the eligibility criteria were not



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

satisfied could cause harm to AT&T by depriving it of future payments from the customer if that customer chose to leave AT&T's cellular network.

In approximately June or July of 2012, Defendant was contacted by an individual named "Frank" through Facebook. (Defendant now understands that the man whom he knew as "Frank" is, in fact, Muhammad Fahd.) "Frank" used a Facebook account listed under the name "Frank Zhang." "Frank" told Defendant that he had spoken to Defendant before when he had called AT&T to unlock his phone. "Frank" told Defendant that Defendant had denied his unlock request because he did not meet the eligibility criteria set by AT&T. "Frank" indicated that, after the call, he had looked Defendant's name up on Facebook and had found Defendant's Facebook page.

"Frank" offered Defendant a lot of money if Defendant would help him secretly unlock cell phones at AT&T. "Frank" gave Defendant detailed instructions on how to communicate with him. At the outset, "Frank" told Defendant to set up a new email account and to buy a pre-paid cell-phone so they could have private communications. Defendant followed "Frank's" instructions and set up three email accounts, tyronejeromeskee@gmail.com, tropoja786@gmail.com, and tropoja786@yahoo.com. Defendant used these accounts to communicate with "Frank's" email accounts, which included unlockoutlet@gmail.com and unlockoutlet@ymail.com. On August 14, 2012, "Frank" used the account unlockoutlet@gmail.com to send Defendant a picture of himself.

By August 2012, Defendant was regularly unlocking phones for "Frank." "Frank" emailed Defendant lists of international mobile equipment identity numbers ("IMEIs") for cellular phones for Defendant to unlock. Most or all of "Frank's" emails travelled from outside the United States to the State of Washington. After "Frank" sent Defendant a list of IMEIs to unlock, Defendant sometimes went to a computer in AT&T's breakroom, logged into AT&T's unlocking



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

program using his network credentials, and entered the IMEIs from "Frank's" list and unlocked them. Defendant then emailed "Frank" with a report that showed which IMEIs had been unlocked successfully. Defendant used the computer in the break room to avoid attracting attention to his workstation. Defendant understood that, when he used his network credentials to unlock the IMEIs "Frank" sent, Defendant was fraudulently misrepresenting to AT&T that these IMEIs belonged to eligible customers who satisfied AT&T unlocking criteria.

"Frank" directed Defendant to recruit other AT&T employees to help with the unauthorized unlocks. "Frank" told Defendant he needed additional AT&T employees to join the scheme, because he wanted someone to be available at all times to expand his ability to do unauthorized unlocks. "Frank" said he would pay Defendant money for each person Defendant recruited. Around September 2012, Defendant successfully recruited AT&T employees K.E. and D.W. to join the scheme

In the spring of 2013, AT&T implemented a new unlocking system that made it more difficult to unlock IMEIs for "Frank." In response, "Frank" told Defendant that he had hired a software developer to custom-design malware that Defendant could put on AT&T's computer system to unlock phones automatically. At "Frank's" request, Defendant provided confidential information to "Frank" about AT&T's computer system and unlocking procedures. Among other things, "Frank" had Defendant install malware on AT&T's computers that captured information about AT&T's computer system and about the network credentials of other AT&T employees. "Frank," in turn, told Defendant that he had provided the information to his malware developer so the developer could tailor the malware to work on AT&T's computers.

Defendant helped "Frank" test multiple versions of the malware until the malware became functional in April 2013. Once Defendant installed the malware, the malware had the ability to use Defendant's AT&T credentials to unlock



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

phones without Defendant's direct involvement. When Defendant showed up to work, all Defendant had to do was log into his workstation and activate the malware. The malware then interacted with AT&T's computer system and performed the unauthorized unlocks in the background during the day while Defendant carried out his legitimate job responsibilities.

At the start of the scheme in 2012, "Frank" told Defendant to set up a fake business and a bank account for that business to receive payments from him. "Frank" told Defendant to create a fake invoice for every deposit that was made into the fake business' bank account to create the appearance that the money was payment for a genuine service that Defendant's company provided. "Frank" told Defendant to issue these fake invoices to "SwiftUnlocks."

Pursuant to "Frank's" instructions, Defendant set up a fake company called Sapatin Enterprises and a bank account in the name Marc C. Sapatin dba Sapatin Enterprises for the business. Starting in August 2012, Defendant issued fake invoices for supposed technical services to make the payments Defendant received from "Frank" appear to be legitimate income. In reality, Defendant's company never provided any technical services to "SwiftUnlocks" or any other customer. From approximately August 2012 to October 2013 ~~September~~, Defendant was paid $428,500 through his fake business as payment for his participation in the illegal unlocking scheme.

In October 2013, AT&T investigators discovered the malware and that K.E. and Defendant were conducting large numbers of unauthorized unlocks. AT&T investigators and, then, law enforcement officers asked to speak with Defendant. Later, Defendant told "Frank" that law enforcement had contacted him about what had happened at AT&T. "Frank" told Defendant not to say anything to law enforcement and to provide him with updates if law enforcement contacted him again. "Frank" told Defendant that K.E. would pay if she talked to law enforcement.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

"Frank" further told Defendant that she "[messed] with" the wrong person.

In October 2013, Defendant left AT&T. In the fall of 2014, "Frank" contacted Defendant and requested that Defendant again help him with his scheme to unlock phones. Defendant subsequently provided "Frank" with a list of people who still worked at AT&T who might be willing to unlock phones for him.

In 2014, Defendant performed various tasks for "Frank" to help with the unlocking scheme, including assisting with a plan to have D.W., who still worked at AT&T, plug devices into AT&T's protected computer network to give "Frank" access to the network. For example, on November 25, 2014, "Frank" sent Defendant a router by Federal Express from Dubai to Defendant's residence in Lynnwood, Washington. Defendant then gave that router to D.W. "Frank" sent Defendant payments in return. For example, on November 12, 2014, "Frank" wired Defendant $1,004.10 through Western Union, and, on November 13, 2014, "Frank" wired Defendant $4,052.00 through Western Union.

In 2015, "Frank" requested that Defendant meet him in Dubai, and Defendant agreed. On August 10, 2015, Defendant traveled from SeaTac, Washington, to Dubai to meet with "Frank." "Frank" and a person he described as his cousin picked Defendant up at the airport. (Defendant now understands that "Frank's" cousin was Ghulam Jiwani.) Defendant was able to recognize "Frank" easily because they had communicated by video chat.

"Frank," suspiciously, asked if Defendant had come with anyone. In addition, during Defendant's trip, "Frank" kept checking Defendant's phone to make sure Defendant had not taken any pictures of him. "Frank" bought Defendant's ticket, paid for Defendant's hotel room, and gave Defendant $8,000 as payment for work Defendant did for him in 2013. . Including the earlier payments he had received, Defendant received at least $441,500 for his role in the scheme "Frank"



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and Defendant discussed a plan for continuing the unlocking scheme. In particular, "Frank" asked Defendant to give D.W. instructions for how to use routers and other devices on AT&T's network to give "Frank" continued to access to AT&T's system.

Defendant understands that Muhammad Fahd has been arrested in Hong Kong and is charged with committing the crimes described by Defendant as having been committed by the person Defendant knew as "Frank." Defendant has reviewed Fahd's booking photograph. Based upon Defendant's prior contacts with "Frank," Defendant recognizes the person arrested in Hong Kong and depicted in the booking photograph as being the person Defendant knows as "Frank."

Defendant understands that AT&T's forensic analysis shows that, between June 27, 2013, and August 27, 2013, Defendant submitted 676,509 unlock requests, many of them milliseconds apart. Defendant agrees that this is a reasonable estimate of the number of cellular telephones that he fraudulently unlocked during this two month window. Defendant understands that AT&T's forensic analysis shows that the total number of cellular telephones fraudulently unlocked by members of the scheme substantially exceeded 1,000,000, that more than 10 AT&T computers were affected, and that, although AT&T estimates that its losses are in the tens of millions of dollars (but still is working to calculate its losses), AT&T unquestionably suffered more than $5,000 in losses.

The parties agree that the Court may consider for the purpose of sentencing additional facts contained in the Presentence Report, subject to objections by the parties, as well as any facts presented by either party at sentencing.

10. **United States Sentencing Guidelines**. Defendant understands and acknowledges that the Court must consider the sentencing range calculated under the United States Sentencing Guidelines and possible departures under the Sentencing Guidelines together with the other factors set forth in Title 18, United States Code,



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Section 3553(a), including: (1) the nature and circumstances of the offenses; (2) the history and characteristics of the defendant; (3) the need for the sentence to reflect the seriousness of the offenses, to promote respect for the law, and to provide just punishment for the offenses; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of the defendant; (6) the need to provide the defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records. Accordingly, Defendant understands and acknowledges that:

a. The Court will determine applicable Defendant's Sentencing Guidelines range at the time of sentencing;

b. After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

c. The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

d. Defendant may not withdraw his guilty pleas solely because of the sentence imposed by the Court.

11. **Acceptance of Responsibility.** At sentencing, *if* the district court concludes Defendant qualifies for a downward adjustment acceptance for acceptance of responsibility pursuant to USSG § 3E1.1(a) and Defendant's offense level is 16 or greater, the United States will make the motion necessary to permit the district court to decrease the total offense level by three (3) levels pursuant to USSG §§ 3E1.1(a) and (b), because Defendant has assisted the United States by timely notifying the United States of



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

his intention to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

12. **Non-Prosecution of Additional Offenses.** As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to prosecute Defendant for any additional offenses known to it as of the time of this Agreement that are based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation. In this regard, Defendant recognizes the United States has agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Agreement. Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant.

Defendant agrees that any charges to be dismissed before or at the time of sentencing, and any other potential charges that were discussed but were not filed, were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119 (1997).

13. **Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that, if Defendant breaches this Plea Agreement, the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States has evidence. Defendant agrees not to oppose any steps taken by the United States to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement. Defendant also agrees that if Defendant is in breach of this Plea Agreement, Defendant has waived any objection to the re-institution of any charges in the Indictment that were previously dismissed or any additional charges that had not been prosecuted.

Defendant further understands that if, after the date of this Plea Agreement, Defendant should engage in illegal conduct, or conduct that violates any conditions of release or the conditions of his confinement, (examples of which include, but are not



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services Officer, Probation Officer, or Court), the United States is free under this Plea Agreement to file additional charges against Defendant or to seek a sentence that takes such conduct into consideration by requesting the Court to apply additional adjustments or enhancements in its Sentencing Guidelines calculations in order to increase the applicable advisory Guidelines range, and/or by seeking an upward departure or variance from the calculated advisory Guidelines range. Under these circumstances, the United States is free to seek such adjustments, enhancements, departures, and/or variances even if otherwise precluded by the terms of the plea agreement.

14. **Waiver of Appellate Rights and Rights to Collateral Attacks.** Defendant acknowledges that by entering the guilty pleas required by this Plea Agreement, Defendant waives all rights to appeal from his conviction and any pretrial rulings of the court. Defendant further agrees that, provided the court imposes a custodial sentence that is within or below the Sentencing Guidelines range (or the statutory mandatory minimum, if greater than the Guidelines range) as determined by the court at the time of sentencing, Defendant waives to the full extent of the law:

a. Any right conferred by Title 18, United States Code, Section 3742, to challenge, on direct appeal, the sentence imposed by the court, including any fine, restitution order, probation or supervised release conditions, or forfeiture order (if applicable); and

b. Any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation; and

This waiver does not preclude Defendant from bringing an appropriate motion pursuant to 28 U.S.C. § 2241, to address the conditions of his confinement or the decisions of the Bureau of Prisons regarding the execution of his sentence.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to effectiveness of legal representation) the conviction or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

15. **Voluntariness of Plea**. Defendant agrees that he has entered into this Plea Agreement freely and voluntarily and that no threats or promises, other than the promises contained in this Plea Agreement, were made to induce Defendant to enter his pleas of guilty.

16. **Statute of Limitations**. In the event this Agreement is not accepted by the Court for any reason, or Defendant has breached any of the terms of this Plea Agreement, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to: (1) thirty (30) days following the date of non-acceptance of the Plea Agreement by the Court; or (2) thirty (30) days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

//

//

//



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

17. **Completeness of Agreement**. The United States and Defendant agree that, except as to certain matters set forth during the plea colloquy in open Court, these terms constitute the entire Plea Agreement between the parties. This Plea Agreement binds only the United States Attorney's Office for the Western District of Washington. It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor.

DATED: this 30th day of October, 2018.



MARC SAPATIN
Defendant

CHRISTOPHER R. BLACK
Attorney for Defendant

ANDREW C. FRIEDMAN
Assistant United States Attorney

FRANCIS FRANZE-NAKAMURA
Assistant United States Attorney

ANTHONY TEELUCKSINGH
Trial Attorney
Computer Crime & Intellectual Property Section, U.S. Department of Justice



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970